At this time, we'll turn to the day calendar and we'll hear Boonmalert v. City of New York. Good morning. Good morning, your honors. My name is Special Hagan, and I'm here on behalf of Appellant Bonsanti Boonmalert. We're here today challenging the district court's  ruling on Rule 12B-6. We have a number of issues with the court's decision starting. And we're seeking either vacature or reversal of the district court in the alternative. First off, we're arguing that the district court failed to, basically, we're seeking vacature to begin with because the district court considered documents that were outside of the pleadings that were either integral to the pleading or basically did not, I guess, did not view the pleadings in a light most favorable to the plaintiff. Which is typically the standard that is required under the law. Specifically, there are factual questions surrounding the stipulation of settlement agreement that could be found on appendix pages 41 through 43, if I remember correctly, actually 43 to 45. And what we're arguing is that the stipulation of settlement agreement that's being presented to the court specifically does not reflect what my client had actually received. And part of that has to do with the chain of events that were listed in the complaint itself. Specifically, my client only received one stipulation of settlement agreement. And that stipulation of settlement agreement was dated on March 12th. As the facts were pleaded in the complaint, Mr. Ying also received the settlement agreement. So my client received a settlement agreement that offered him an 8% increase. Should he work until December 31st, 2015. And at the same time, Mr. Ying received a settlement agreement that offered him a 12% increase. My client rejected his initial and only settlement agreement based on the settlement agreement that Mr. Ying had that offered him 12% outright. Now the city has presented another document that insinuates that my client received the same settlement agreement. Which is not the case. My client never received the settlement agreement. Doesn't the complaint refer to the settlement agreements? It doesn't actually refer to the settlement agreements by date, actually. My client was under the impression that there was only one. When he rejected the first one, he never received another opportunity. What the exhibit C and D, I guess in conjunction, implies that well the exchange between the union's lawyer and the office of labor relations regarding the grievances. Basically that my client was offered the same agreement as Mr. Ying, but he wasn't. He was only offered the first one, and he never was offered again. And if you look at the email chain, there's no proof that my client was offered another settlement agreement outside of this email chain. And he's not CC'd in the email chain. There's no stipulation of settlement agreement that was addressed to my client. But yet, the city provides the settlement agreement that's signed and executed by Mr. Ying, basically insinuating that my client received the same opportunity. He didn't. Can I ask you whether there's a different problem with this settlement agreement issue that you're raising? Relying only on the lesser settlement offer that you refer to. That occurred before your client filed any kind of administrative complaint. And so therefore, I don't see how it can be a basis for your retaliation claim. In so far as it's relied on as evidence of discrimination, isn't the timing of it outside the 300 days for EEOC filing? Don't you have a timeliness problem there? So I see twin problems even without getting to their claim that there was an equal offer. Okay. Well, the first, I guess let me try to make sure I understood both questions. The- You're relying on this to support your claim that your client was retaliated against. That's what I'm focusing on. Not exactly. We're relying on the fact that my client, that Mr. Ying filed a settlement within, I guess maybe weeks at best of my client filing with the EEOC. And- Before. No. Before he filed. No, Mr. Ying was offered after. I understood the offer of the lesser settlement occurred before filing. Is that not correct? No, there are two settlement agreements, apparently, that are taking place. The lesser settlement- The lesser- I thought was offered before your client filed with the EEOC. Is that incorrect? That was actually the grounds that prompted him to file with the EEOC. Okay, then perhaps I misunderstood. When my client saw that Mr. Ying was being offered 12% and he was being offered 8% conditioned upon him retiring. That's what prompted him to file with the EEOC. He initially filed a grievance with Mr. Ying in July of 2013. I think it was July of 2013. And then they had step one and step two hearings in November of 2014 and then February of 2015. And then the initial settlement agreement that was proposed to my client was offered on March 12th of 2015. And then my client rejected that and filed an EEOC charge on June, in June of 2015. So we're within the statutory time period at that point. And then after that, well, there's actually two dates on the stipulation of settlement agreement that the city offers. The union- That's the one that you object to. They were objecting to, but the union signs it on August 17th, 2015. But the date of the agreement itself is dated September 21st, 2015. But again, we're objecting to it because it implies that my client had an opportunity to have a stipulation of settlement that Mr. Ying had. And to be clear, Mr. Ying received a lump sum payment for all the out of title work that he performed, which my client also continues to perform, and he also has received the increase. My client has never received either one. And to be clear, and I don't think that the complaint really articulates this, the union actually has standing to file a grievance. So Mr. Ying or my client would not be able to file a grievance on this level in their individual capacity. So the union would be the party that they would resolve this with. So if it was determined that either one or both were working out of title, then they should have been compensated for that work, but that never happened. There's a deviation from the standard practice here. You reserve three minutes of rebuttal? Yes. We will hear you then. Thank you. Good morning, your honors. May it please the court. John Moore on behalf of the city of New York. The district court's decision dismissing this case should be affirmed because the plaintiff has not pled any facts to show that he suffered any adverse employment actions as a result of his age. Even under the relatively forgiving pleading standards for employment discrimination cases, the complaint fails. I want to start with the issue of the documents that the court considered here, as that was what the plaintiff has raised here today. The offers. Yes, the different offers. So I have three points to make on that. The first of which is that the documents were properly considered by the district court. The basis of the plaintiff's claim, at least in this aspect of it, centers around the negotiations and settlement offers that were made to plaintiff and to Mr. Ying. Particularly, he alleges that the offers were different. To the extent that the negotiations and offers that were available are the basis of the complaint, these documents illuminating the offers and negotiation are integral to the complaint. Moreover, the argument that the objection- There's a challenge as to either the authenticity or more likely the fact of delivery of the document that you're relying on. Yes, your honor, though there's a bit of confusion on that point, I think, in that the- I'm certainly confused. Yes, in that the documents were delivered to plaintiff's union representative. There's no dispute on that point. The emails show it goes to Mr. Maitland, who is representing both plaintiff and Mr. Ying in the settlement negotiations. You said that there's no dispute. It was not challenged here, at least. There's no dispute between you and Ms. Hagan about that. Not as far as I can gather from the documents you submitted or her argument today. That the email was not copied to the plaintiff in this case. The email was sent to his union representative. To the extent, at that point, the city had properly communicated the offer to the representative for the plaintiff. And it's that individual's responsibility to convey it to his client. To the extent that that breakdown, that there was a breakdown in that communication, that can't be attributed to the city. So even to the extent that we take seriously the plaintiff's claim that he never received the offer, his union representative plainly did receive the offer as evidenced by the email communication. And again, it's not the city's fault that it wasn't communicated to him. Moving to the next point on this issue, the consideration of those documents was not preserved below. They were presented with the plaintiff's, rather the defendant's motion to dismiss. Plaintiff didn't object to those documents below, didn't preserve the argument that the court shouldn't consider it. And the district court apparently saw no objection to doing so. Moreover, even in this court, the plaintiff didn't object to the consideration of those documents in his opening brief. It wasn't until his reply brief that this issue was brought before the court. An argument raised in reply brief for the first time is not properly before the court. Finally, one last point on this is that the plaintiff has taken an inconsistent position as to whether these documents ought to be considered even across the different portions of the argument. On the one hand, plaintiff is arguing that these documents ought not be considered, that they are outside the record, that they don't form any part of the complaint. On the other hand, plaintiff is arguing that the existence of these documents and the existence of the second settlement offer that Mr. Ying accepted is somehow evidence of retaliation against plaintiff. In that sense, plaintiff is trying to have it both ways, to allow the documents to be considered where he perceives it to help him, but disallow them from consideration when he views them as harmful. The argument doesn't hold water on any level, both as a matter of merit, as a matter of procedure, or as a matter of internal consistency. And so for that reason, the documents are properly considered and do in fact indicate that the claims fail. Turning to the retaliation issue that Judge Raggi raised earlier, you're correct that the entirety of the complaints alleged in the complaint precede the EEOC complaint. There's no allegation in the complaint of any conduct occurring after that EEOC complaint was filed. Absent actions following the protected activity, a retaliation claim can't stand. The argument on appeal has now morphed into, well, Mr. Ying has been paid because he agreed to the settlement offer, whereas the plaintiff has not been paid, though there's no allegation that he agreed to the settlement. The city's under no obligation to pay out for settlement agreements that weren't agreed to. And the notion that it is based on the payment to one party, not non-party rather, one individual who agreed to a settlement, is somehow retaliation against somebody who did not agree to the settlement, has no basis in law or in the facts of this case. As with most of the allegations in the complaint, the- What do you make of the allegation that the offer of settlement to Mr. Boone-Mullert was conditioned upon his retiring? The initial offer does contemplate his retirement. That's what I was asking you. Yes, and so it was not conditioned on his retirement. If he did not retire, I think by December 31st, 2015, there's no obligation that he do so. The 8% pay raise that he received up to that point wouldn't be clawed back. He would retain that money, and his salary would revert to the previous level moving forward. That in itself, the offer itself, however, is not an adverse employment action. It didn't, in itself, change the terms and conditions of Mr. Boone-Mullert's employment for the worst in any material way. It was an offer. It was an unaccepted offer at that, and it was replaced by an offer that was the same, both for Mr. Ying, who was younger, and Mr. Boone-Mullert, the plaintiff here. So that can't support, that does not give rise to a claim of age discrimination under the ADEA. Unless this court has any further questions, I'm happy to rest on the briefs for the remainder of the claims. Thank you. Thank you. Ms. Hagan, we'll hear you. I'd like to touch on the city's arguments that were raised. Firstly, the fact that there's this dispute between the city and my client about the stipulation of settlement agreements, in and of itself reflects the problem with having a motion to dismiss at this juncture. There's clearly a factual dispute surrounding a cause of action in the case. Again, contrary to the city's representation, there was a clear adverse action when it came to those settlement agreements, specifically with my client. It's clear that he would receive the 8% increase as long as he worked until December 31st, 2015. If he did not retire, he went back to his prior salary. Mr. Ying didn't go back to his prior salary after December 31st, 2015. So clearly- Is that because Mr. Ying accepted the offer? There's no question, the way the stipulation of settlement agreements were drafted, Mr. Ying's settlement agreement did not have a date certain for him to retire or anything else. He received, in our version of the facts, a 12% increase outright. Now this other document that the city has submitted, it represents perhaps Mr. Ying being able to file another grievance. But we are arguing that my client never even had the opportunity to consider the second offer. My client was only offered the one initial 8% increase and retire by December 31st, or go back to your original salary. And that was it. Mr. Ying did not have a condition upon receiving the settlement. And as far as the retaliation, and first off, our argument is that when the city realized that my client had filed an EEOC charge, they decided to resolve Mr. Ying's grievance and not my client's. Which although they should have been considered as one, rather than separately. That is our argument. And out of retaliation, because he had complained, we believe that the city basically decided to resolve Mr. Ying and give him the out of title money that he earned. And not give my client the out of title money that he also earned. And again, it had nothing to do with whether or not he agreed to anything. Once it was determined that they had worked out of title, he was entitled to those monies. It had nothing to do with an agreement. Now had there been an increase in his salary going forward, perhaps that was something they could have negotiated as far as the amount or the percentage. But in this instance, my client never had an opportunity to consider those things. Thank you. Thank you both. It was your decision.